# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

KENNETH WILLIAMS,

Petitioner,

v.

D. PARAMO, et al., Warden,

Respondent.

Case No.: 17cv2475-CAB (NLS)

**REPORT AND RECOMMENDATION:**

**(1) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

**[ECF Nos. 9, 10]**

//
//
//
//
//
//
//

1

Plaintiff Kenneth Williams ("Plaintiff"), a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. § 1983 claiming that Defendants[1] violated several of his constitutional rights while he was incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California. ECF No. 1.

Defendants filed a motion for summary judgment seeking judgment in their favor on all claims, contending that Plaintiff failed to exhaust his administrative remedies, as well as a motion to dismiss the complaint for failure to state a claim on certain claims. ECF Nos. 9-1, 10. Defendants, and the Court, notified Plaintiff of the requirements for opposing summary judgment pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). ECF No. 11. The Court granted Plaintiff two extensions of time to file his opposition to the motions. ECF Nos. 13, 16. Plaintiff filed an opposition,[2] ECF No. 18, and Defendants did not file a reply.

For the reasons outlined below, the Court **RECOMMENDS** that the district judge (1) **DENY** the motion for summary judgment and (2) **GRANT IN PART AND DENY IN PART** the motion to dismiss.

---

[1] Defendants to this action include E. Garza, A. Khan, R. Brown, and D. Paramo. All defendants, collectively, seek summary judgment and to dismiss portions of the complaint. Garza is the facility captain of the A-yard; Khan is the Islamic Chaplain; Brown is the community resource manager; and Paramo is the warden. ECF No. 1 at 2; ECF No. 9-1 at 5.

[2] In the second order extending the deadline by which Plaintiff was to respond to Defendants' motion for summary judgment and motion to dismiss, the Court imposed a deadline of August 20, 2018. ECF No. 16. Plaintiff did not file his opposition until September 11, 2018. ECF No. 18. However, Defendants have not challenged Plaintiff's opposition on timeliness grounds and though late filings should be avoided, other courts have made exceptions for prisoners proceeding *pro se*. *See, e.g.*, *Hall v. San Joaquin Cty. Jail*, No. 2:13-cv-0324 AC P, 2018 U.S. Dist. LEXIS 15029, at *2 (E.D. Cal. Jan. 30, 2018) ("Because the [pro se prisoner's] opposition was not excessively late, and there does not appear to be any prejudice to defendants, the court will . . . consider the opposition timely filed."). Accordingly, the Court will take into consideration Plaintiff's opposition.

## I.    FACTUAL BACKGROUND

Plaintiff contends that Defendants violated his First and Fourteenth Amendment rights by excluding him from participating in Ramadan.[3]  ECF No. 1 at 3-4.  Plaintiff alleges that Warden Paramo contracted with Chaplain Khan to conduct weekly Islamic services at RJD.  *Id.* at 3.  Instead of personally conducting these services, Plaintiff alleges that Chaplain Khan improperly allowed inmates to facilitate them in his place, and the inmates who facilitate the program have "lifestyles in conflict with Plaintiff's beliefs and Islamic teachings."  *Id.*  Hence, Plaintiff did not regularly participate in Islamic Services.  *Id.*

Plaintiff did sign up to participate in Ramadan fasting.  *Id.*  However, on May 26, 2017, the day Ramadan was set to begin, Plaintiff alleges that he learned that his name was taken off the participation list and he would be excluded from participating because he did not regularly attend services.  *Id.*

On that same day, Plaintiff filed an "inmate request for interview, item or service" ("Form 22"), requesting that he be allowed to participate in Ramadan.  *Id.* at 3, 12. Plaintiff claims that this initial Form 22 complaint was ignored by RJD officials[4] and as a result, he was excluded from participating in Ramadan for the entire month.  *Id.* at 3-4.

On June 23, 2017, Plaintiff filed a grievance with the first level of RJD appeals. *Id.* at 8.  There, he reiterated that he was unfairly excluded from participating in Ramadan, and claimed that though he formally complained in May, "[t]he Muslim Chaplin failed to respond at all to my 22 Form the entire month of Ramadan."  *Id.* at 8, 10.  As redress, Plaintiff sought "action by RJD officials to cease from 'inmates' being allowed to take other inmates off the Ramadan participation list for not regularly

---

[3] These facts are taken from Plaintiff's complaint (ECF No. 1), and are construed as true only for the purpose of resolving the motion to dismiss.  *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013) (reasoning that when considering a motion to dismiss, courts presume the facts alleged by the plaintiff are true).

[4] Defendants have not submitted any documentary evidence to the contrary.

17cv2475-CAB (NLS)

attending [] Services." *Id.* at 10.

On July 19, 2017, J. Davies, AA/PIO, issued a memorandum in response to Plaintiff's first level appeal. *Id.* at 15-16. In the memorandum, Davies stated that Plaintiff was interviewed by Defendant Brown. *Id.* at 15. The issue was identified to be "Inmates on Facility A removed you from the Ramadan list because you do not attend regular services." *Id.* at 15. The "Action Requested" was "[t]o attend regular services and to be on the Ramadan List for next year." *Id.* at 15. Plaintiff's first level appeal was granted, and Brown agreed to work with the Men's Advisory Council to educate the inmates about proper procedures during religious events and to add Plaintiff to next year's Ramadan list. *Id.* at 15-16. Davies's memorandum also informed Plaintiff that "this issue may be submitted to the Second Level of Review, if desired." *Id.* at 16.

On July 27, 2017, Plaintiff filed a grievance with the second level of RJD appeals. *Id.* at 9. There, he stated, "I do appreciate that 'next year' I will be allowed to participate in Ramadan, however, this year I was denied the opportunity the entire month of Ramadan." *Id.* at 9. He reiterated that the Chaplain ignored his initial May 2017 complaint and the contemporaneous email sent by Sergeant Scharr on his behalf, and that without having shirked his duties, Plaintiff would have been able to participate in Ramadan. *Id.* at 9, 11. He also stated that the response from his first level appeal did not address prisoners facilitating the religious services, and that if the Chaplain had been there, Plaintiff would have attended weekly, which would have eliminated the reason he was excluded from Ramadan in the first place. *Id.* at 11. He concluded by stating, "Allowing me to participate next year is ok for the future, but something needs to be done that would prevent giving 'inmates' the power to decide who participates in Ramadan and for the Chapl[a]in to fulfill his duty statement." *Id.*

On August 24, 2017, P. Covello, Chief Deputy Warden, issued a memorandum in response to Plaintiff's second level appeal. *Id.* at 13-14. There, Covello restated Plaintiff's contentions that (1) "inmates facilitating regular Muslim services prevent [him] from attending" and (2) the "chaplain [should] attend regular services for Muslim

inmates." *Id.* at 14.  In granting Plaintiff's second level appeal, Covello concluded that (1) RJD would work with the Inmate Advisory Council to educate the inmates about proper procedures during religious events, but (2) since "Muslim services have to be held on a specific time and day, on all six facilities, it is impossible for him to attend all the services.  However, the institution is currently recruiting Muslim volunteers to help with services." *Id.*  Covello's memorandum also informed Plaintiff that "this issue may be submitted to the Third Level of Review, if desired." *Id.*

Plaintiff did not file a third level appeal.  ECF No. 18 at 4; *see also* ECF No. 9-2 at 2.  Instead, Plaintiff filed this action.  In his complaint, Plaintiff answered "yes" to the question of whether he previously sought and exhausted all forms of available relief from the proper administrative officials and wrote that his appeals were "granted." ECF No. 1 at 6.  In describing the administrative actions, he wrote "Granted Appeal Attached – to date no action taken at all." *Id.*  For the relief desired, Plaintiff stated that he seeks "an injunction preventing defendant(s) from allowing 'prisoners' to facilitate Islamic Services and asserting authority over Religious Freedoms of other Prisoners" and damages, including punitive, in an amount to be determined. *Id.* at 7.

## II. MOTION FOR SUMMARY JUDGMENT

### A. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex. Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if a reasonable jury could return a verdict for the nonmoving party.  *Id.*

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to establish

5

an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Celotex*, 477 U.S. at 330. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In making this determination, the Court must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). The Court determines only whether there is a genuine issue for trial and, in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). The court should not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

When defendants seek summary judgment based on the plaintiff's failure to exhaust specifically, they must first prove that there was an available administrative remedy and that plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (quotation marks omitted). If they do, the burden of production then shifts to the plaintiff "to show that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191; *see also Ross v. Blake*, 136 S. Ct. 1850, 1858-60 (2016). Only "[i]f the

undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, [is] a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166.

## B.    DISCUSSION

Defendants contend that Plaintiff failed to exhaust his administrative remedies because, though he sought review at the first and second levels of appeal, he failed to take his grievance to the third level of appeal.  ECF No. 9-1 at 12-14.  Plaintiff argues that he did not fail to exhaust his administrative remedies because he was not required to reach the third level of appeal, which is reserved only for grievances that were not resolved at the second level.  ECF No. 18 at 9.

### i.    Legal Standard for Exhaustion

The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e (a). Therefore, exhaustion is "mandatory" before bringing a federal action.  *Ross*, 136 S. Ct. at 1856; *see Porter v. Nussle*, 534 U.S. 516, 524 (2002).  A prisoner is not required to plead exhaustion in his complaint; it is an affirmative defense that must be raised and proven by a defendant.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).

The Supreme Court has "held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' []—rules that are defined not by the PLRA, but by the prison grievance process itself."  *Id.* at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (internal citation omitted)).  The exhaustion requirement offers the prison a chance to resolve the issue on its own and "promotes efficiency" by allowing claims to be resolved more quickly than litigation.  *Woodford*, 548 U.S. at 90.  Thus, a prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the exhaustion requirement.  *Jones*, 549 U.S. at 218.

Grievance procedures are available if they are "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)); *see also Williams*, 775 F.3d at 1191 ("To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'") (quoting *Albino*, 747 F.3d at 1171).

## ii.    CDCR's Exhaustion Requirements

Thus, under this legal framework, the Court must look to the prison's grievance procedure. The California Department of Corrections and Rehabilitation's ("CDCR") administrative appeal system for inmates in the California prison system is described in Title 15 of the California Code of Regulations: "Any inmate . . . under the [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). For appeals submitted after January 28, 2011, inmates must commence the appeals process by submitting a CDCR Form 602 to the facility's appeals coordinator describing "the specific issue under appeal and the relief requested." *Id.* at § 3084.2(a), (c). Among other requirements, the appeal must be "limited to one issue or related set of issues" and "list all staff member(s) involved and shall describe their involvement in the issue." *Id.* at § 3084.2(a)(1), (3). Administrative remedies

> shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 . . . and addressed through all required levels of administrative review up to and including the third level. In addition, a cancellation or rejection decision does not exhaust administrative remedies.

*Id.* at § 3084.1(b).

If a prisoner is not satisfied with the first level response, he may submit a formal appeal for a second level review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden . . . or the equivalent." *Id.* at § 3084.7(d)(2). If the prisoner is not satisfied with the second level review, he may appeal

to the third level of review by the chief of the Office of Appeals in Sacramento. *Id.* at §
3084.7(c), (d)(3). "The third level review constitutes the decision of the Secretary of the
California Department of Corrections and Rehabilitation on an appeal, and . . . exhausts
administrative remedies." *Id.* at § 3084.7(d)(3).

### iii. Whether Plaintiff's Failure to File a Third Level Appeal Precludes his Lawsuit

This motion hinges on whether Plaintiff was required to file a third level appeal in
order to sufficiently exhaust his claim before bringing an action in federal court.
Defendants argue that because Plaintiff never appealed his grievance to the third level of
appellate review, he did not properly exhaust his administrative remedies. *See generally*
ECF No. 9-1.

However, the analysis does not end there. The PLRA requires that the prisoner
exhaust "such administrative remedies as are ***available***." 28 U.S.C. § 1997e(a) (emphasis
added). The Ninth Circuit has reiterated that the PLRA does not require a prisoner to
exhaust the prison grievance process when no pertinent relief can be obtained through the
internal process:

> That it may be advisable for an inmate to appeal every issue to the highest
> level to avoid any question as to whether the administrative process has been
> adequately exhausted does not alter our conclusion. While "over-exhaustion"
> may be wise so as to expedite later litigation, the fact remains that *Booth* does
> not require an inmate to continue to appeal a grievance once relief is no longer
> "available."

*Brown v. Valoff*, 422 F.3d 926, 934-35, 935 n.10 (9th Cir. 2005) (reiterating the holding
of *Booth v. Churner*, 532 U.S. 731 (2001)). Thus, the Court must analyze whether the
third level was "available" to Plaintiff.

There appears to be some variation in how the various courts within this district
interpret what is "available." Some courts take a more bright line approach and appear to
hold that the third level is not "available" when the prior appeal was granted:

> An inmate has no obligation to appeal from a grant of relief, or a partial grant
> that satisfies him, in order to exhaust his administrative remedies. Nor is it

the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised. . . . Once the prison officials purported to grant relief with which [the inmate] was satisfied, his exhaustion obligation ended. His complaint had been resolved, or so he was led to believe, and he was not required to appeal the favorable decision.

*Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010); *see also Reece v. Sisto*, 536 F. App'x 705, 706 (9th Cir. 2013) (overturning district court's finding of no exhaustion and concluding that a fully-granted appeal at the first level of appeal was sufficient to exhaust remedies, even where the full grant did not practically provide the exact relief plaintiff requested (to have heat turned on in his cell)); *Coats v. Fox*, 481 F. App'x 390, 391 (9th Cir. 2012) (similarly reversing district court and finding sufficient exhaustion where first level review was fully granted even though plaintiff did not get the relief he requested (to be immediately put on medication)); *Bennett v. Bennett*, No. C 10-03775 SBA (PR), 2013 U.S. Dist. LEXIS 146335, at *12 (N.D. Cal. Sept. 30, 2013) (concluding that a partially-granted appeal is sufficient to exhaust remedies, even when higher levels of appeal were not utilized); *Fields v. Masiel*, No. 1:10-cv-01699-AWI-BAM PC, 2012 WL 6692017, at *2 (E.D. Cal. Dec. 21, 2012) (collecting cases with same holding).

Other courts have taken a more nuanced approach. *See, e.g.*, *Cunningham v. Ramos*, No. C 11-0368 RS PR, 2011 WL 3419503, at *3 (N.D. Cal. Aug. 4, 2011) ("[A] partially granted finding is not dispositive of the exhaustion process when, as in the instant matter, further administrative relief is available."). Even where an appeal was technically "granted" or "partially granted," some courts look to the substance of the grant to see if the plaintiff obtained practical relief. *See id.* at *4 (finding no exhaustion because the plaintiff had not technically "receive[d] a favorable ruling," since the "partially granted" relief was an investigation into staff misconduct and that investigation yielded no evidence of misconduct); *Coles v. Cate*, No. 2:10-CV-1996 KJN P, 2011 WL 6260372, at *5 (E.D. Cal. Dec. 15, 2011) (finding that "partial grant" failed to provide plaintiff any "significant substantive relief"). Other courts focus on evaluating evidence as to whether the plaintiff was actually "satisfied" with the relief provided. *See, e.g.*,

*Romero v. Alonzo*, No. EDCV 11-0454-PA DTB, 2012 WL 3689554, at *4 (C.D. Cal. June 11, 2012) ("Here, while plaintiff did receive a 'grant' on his 602 appeals, plaintiff was not satisfied with the relief granted."); *Bell v. Peery*, No. 3:11-CV-00745-RCJ, 2012 WL 6562443, at *6 (D. Nev. Nov. 28, 2012) ("[T]he obligation to exhaust is not excused when a prison official indicates that a grievance is resolved; rather, it is excused when the prisoner receives a satisfactory response.").

Even under this inexact legal framework, the Court finds that Plaintiff has sufficiently exhausted his claims. **<u>First</u>**, both Plaintiff's first level appeal and second level appeal were granted. ECF No. 1 at 14 (second level appeal "granted"), 15 (first level appeal "granted"). Thus, under the cases that appear to take a more bright line approach, Plaintiff should not be expected to pursue further administrative remedy.

**<u>Second</u>**, even delving more into whether Plaintiff obtained substantive relief or was satisfied with the relief he received, the Court also finds that he sufficiently exhausted his administrative remedies. Plaintiff's claim has two components. The first component is that Plaintiff alleges he was wrongly left off the Ramadan list. As to this issue, RJD assured Plaintiff that "[y]ou will be added to next year's Ramadan list" in response to his first level appeal. *Id.* at 15. Plaintiff did not raise this issue again in his second level appeal, which actually indicated that he was satisfied with the response as to this issue. On the second level appeal, he stated "[a]llowing me to participate next year is ok for the future" and "I do appreciate that 'next year' I will be allowed to participate in Ramadan," before bringing up the other issues. *Id.* at 9, 11. These statements, along with Plaintiff not bringing the issue further on his next level appeal, evidence that he was satisfied with being put on next year's Ramadan list.[5]

The second component of Plaintiff's claim is that prisoners should not have been

---

[5] By its very nature, as Plaintiff had already missed Ramadan for 2017 at the point he filed his appeals, there is really no practical relief that would allow him to participate retroactively.

permitted to run Islamic services, which should have been run by the Chaplain himself, and should not have been permitted to modify the Ramadan list. At the first level appeal, the only action taken related to this complaint was that RJD would "work with the Men's Advisory Council (MAC) to help educate the inmate population on proper procedures during religious events." *Id*. at 16. Seemingly unsatisfied with this response, Plaintiff appealed to the second level. At the second level, RJD stated it (1) would now work with the Inmate Advisory Council instead, to educate the inmates about proper procedures during religious events, and (2) was "currently recruiting Muslim volunteers to help with services."[6] *Id.* at 14. The appeal also noted that "[d]ue to that Muslim services have to be held on a specific time and day, on all six facilities, it is impossible for [the Chaplain] to attend all the services." *Id.*

In section 1983 cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt. *West v. Gonzalez*, 37 F.3d 1508 (9th Cir. 1994) (holding as such in the context of a summary judgment motion); *see also Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). In his complaint, Plaintiff stated that his appeal was "granted" but "to date no action taken at all." ECF No. 1 at 6. This can be plausibly interpreted that Plaintiff was satisfied with the relief he was granted at the second level—had RJD followed through—but RJD did not as "to date no action [was] taken at all." *See* ECF No. 1 at 3, 6 (noting that his administrative appeal was "granted[,]" which "also stated action would come[,]" but lamenting that "[t]o date, Islamic services are still facilitated by prisoners and the Chapli[a]n never comes."). This would put Plaintiff's situation squarely within *Harvey*. In *Harvey*, the Ninth Circuit found that the prisoner had sufficiently exhausted where his first level appeal was "granted" but the prison failed to take the action it promised for five months. 605 F.3d at 685. The prisoner filed the federal action without further appeal.

---

[6] Thus, the Court finds factually inaccurate Defendants' contention that "[t]he appeal responses are the same." *See* ECF No. 9-1 at 14.

*Id.* The court reiterated that it is not the prisoner's "responsibility to ensure that prison officials actually provide the relief that they have promised." *Id.* (citing *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) ("A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion.")). Here, Defendants presented no evidence that they complied with the second level relief.

In addition, Plaintiff was told at his second level review that his requested relief to have the Islamic Chaplain run the services was likely impossible as a practical matter, given that the nature of the services required them to be run at the same time and there were six facilities. ECF No. 1 at 14. Thus, Plaintiff may have taken this statement to believe he had no further relief available to him to appeal. These additional factors at play in Plaintiff's situation creates at least a genuine issue of material fact as to whether he was satisfied with the second level appellate relief.

The fact that Plaintiff did not receive the exact relief he requested—in this case, to have prisoners stop running Islamic services and to have the Chaplain himself do it— does not necessarily mean he was unsatisfied with the result and should have kept appealing to get his exact relief. For example, in *Reece v. Sisto*, the prisoner complained about lack of heat in his cell. No. CIV S-10-0203 JAM EFB P, 2012 WL 602921, at *3-*5 (E.D. Cal. Feb. 23, 2012), *rev'd*, 53 F. App'x 705, 706 (9th Cir. 2013)). His first level appeal was "fully granted" but the response was that all equipment was working properly and the average building temperature was 73 degrees. *Id*. The district court opined—just like Defendants here argue—that though the first level appeal was "granted," this was in name only and the jail did not actually purport to grant the relief sought. *Compare id*. at *4 (noting that the prisoner sought heat in the dorms and the appellate response essentially informed him "that the heating system was working properly and that he was being provided adequate heat") *with* ECF No. 9-1 at 13-14 (arguing that Plaintiff sought to either ban inmates from facilitating religious services or mandate that the Chaplain attend, but the appellate response did not ban inmates from facilitating religious services

and also informed him that the Chaplain was too busy to attend all services). Thus, the district court dismissed the claim; however, upon *de novo* review, the Ninth Circuit reversed, stating that "because Reece's grievance was fully granted at the first level of review, Reece 'ha[d] no obligation to appeal from a grant of relief . . . in order to exhaust his administrative remedies.'" *Reece*, 53 F. App'x at 706 (ellipses in original) (quoting *Harvey*, 605 F.3d at 685). Similarly, in *Coats v. Fox*, the Ninth Circuit again reversed a finding of no exhaustion. 481 F. App'x at 391. The district court in that case found for defendants on their motion and again on reconsideration. The prisoner had filed appeals related to not receiving medication and he requested that the medication "immediately be started to avoid further liver damage." *Coats v. Fox*, No. CIV S-09-1300-CMK-P, 2011 WL 6141119, at *2 (E.D. Cal. Dec. 9, 2011). The prison "granted" the request but actually stated that he would get the medication once he reaches a "mainline facility." *Id.* Despite not having gotten exactly what he wanted—to be on the medication immediately—the Ninth Circuit still found sufficient exhaustion.

Defendants also argue that Plaintiff was required to continue his appeal to the third level because Plaintiff was advised of its availability.[7] ECF No. 9-1 at 14. However, language regarding the availability of a further appeal is insufficient by itself to meet the Defendants' burden of demonstrating the existence of additional available relief. *See, e.g.*, *Smith v. Cruzen*, No. 14-CV-4791-LMK(PR), 2017 WL 7343445, at *9 (N.D. Cal. May 2, 2017) (concluding that formulaic language regarding an available next level of review was insufficient to prove that "further relief actually remained available."); *Foster v. Verkouteren*, No. 08-cv-0554-CAB, 2009 WL 2485369, at *5 (S.D. Cal. Aug. 12, 2009) (recognizing that although plaintiff was "specifically advised" to continue appealing in order to exhaust his claims, "the advisement appears to be standard language and not a clear indication that further relief was available to Plaintiff").

---

[7] The decision of the second level appeal contained a notation stating that "this issue may be submitted to the Third Level of Review, if desired." ECF No. 1 at 14.

17cv2475-CAB (NLS)

Furthermore, Defendants' reliance on *Fields v. Ajhaj* is misplaced. *See* ECF No. 9-1 (referencing *Fields v. Ajhaj,* No. 16-cv-1318-MMA (DHB), 2017 WL 3525174, at *4 (S.D. Cal. Aug. 16, 2017)). There, the inmate ("Fields") filed a grievance because he was denied kosher meals. *Fields*, 2017 WL 3525174, at *1. Fields's first level appeal was approved "with modification," indicating that he was not approved for kosher meals, but that he was placed on an approval list to be submitted to the rabbi. *Id.* Nearly four months later, he appealed to the first level, again seeking approval for kosher meals. *Id.* In this appeal, his request for kosher meals was denied. *Id.* In response, approximately one month after the denial, Fields appealed to the third appellate level, which was screened out and rejected because he bypassed the second level. *Id.* at *2; Defendants Exhibit B in support of Motion for Summary Judgment at 18-22, *Fields*, 2017 WL 3525174 (Apr. 26, 2017) (ECF. No. 30-3). He never resubmitted that appeal. *Fields*, 2017 WL 3525174 at *2. *Fields* is factually distinguishable from the instant case. In *Fields*, though one of his appeals was labeled as partially approved, his subsequent appeal was denied. Thus, his subsequent attempts at appealing illustrate that he was dissatisfied with the outcome, regardless of how it was labeled. In granting summary judgment the court in *Fields* noted that, "[d]espite its presentation as an approval 'with modification,' the panel's response did not provide Plaintiff with the relief he sought. To the contrary, the panel denied Plaintiff's request for a kosher diet and participation in Jewish services." *Id.* at 3. This holding is consistent with *Harvey*. 605 F.3d at 685 ("An inmate has no obligation to appeal from a grant of relief, or a partial grant *that satisfies him*, in order to exhaust his administrative remedies") (emphasis added). Fields was not satisfied with the outcome of his lower appeals, while, here, Defendants have not proven that Plaintiff was not. Here, Plaintiff's appeal was granted, and, as discussed above, in the light most favorable to the Plaintiff, the evidence presented shows that Plaintiff was satisfied with the result and did not appeal again regarding that issue.

For the foregoing reasons, the Court finds that Defendants did not meet their burden to prove that Plaintiff did not exhaust his administrative remedies. Accordingly,

17cv2475-CAB (NLS)

the Court, **RECOMMENDS** that Defendants' motion for summary judgment be **DENIED**.

## III.    MOTION TO DISMISS

Having concluded that Plaintiff survives the motion for summary judgment, the Court turns next to Defendants' motion to dismiss.

### A.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's complaint and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Specifically, "[t]he court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (internal quotations and citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Although, the scope of review is limited to the content within the four corners of the complaint. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (reasoning that allegations of material fact are accepted as true and reviewed for plausibility, while conclusory statements are ignored); *see also Twombly*, 550 U.S. at 555 (explaining that a complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do[.]").  It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ."  *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

Additionally, *pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers" because *pro se* litigants are more prone to making errors in pleading than litigants represented by counsel.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotations omitted); *see Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded by statute on other grounds, Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000).  Thus, when the plaintiff is appearing *pro se*, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  *See Thompson v. Davis*, 295 F.3d 890, 895 (2002) (pro se pleadings construed liberally).  This rule of liberal construction is "particularly important" in civil rights cases.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal interpretation to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  At a minimum, the *pro se* plaintiff "must allege with at least some degree of particularity overt acts which defendants engaged in that support [his] claim."  *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).

## B.  DISCUSSION

Defendants put forth two arguments in their motion to dismiss.  First, they contend that the Court should dismiss Defendants Paramo, Garza, and Brown, as to Plaintiff's entire complaint, because they cannot be liable in their capacity as supervisors.  ECF No. 10-1 at 4-5.  Second, they contend that the Court should dismiss all Defendants, including Kahn, as to Plaintiff's equal protection claim only, because Kahn had a rational basis for excluding Plaintiff from Ramadan.  ECF No. 10-1 at 5-7.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quotation omitted). A section 1983 claim must allege: (1) a violation of rights protected by the Constitution or created by federal statute, (2) was proximately caused (3) by conduct of a 'person' (4) acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). With this framework in mind, the Court turns to each of Defendants' specific arguments.

### i. Plaintiff's Fourteenth Amendment Equal Protection Claim

Defendants contend that the Court should dismiss all Defendants as to Plaintiff's equal protection claim because Plaintiff's failure to attend weekly services provided a rational basis for his exclusion from Ramadan. ECF No. 10-1 at 5-7. Plaintiff argues that he was treated differently from other similarly situated prisoners, and that not attending weekly services is not a rational basis for excluding him from Ramadan. ECF No. 18 at 2.

### a. Classification and Level of Scrutiny

The Equal Protection clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation omitted). Equal protection applies to prisoners as well, "subject to restrictions and limitations necessitated by legitimate penological interests." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1219 (S.D. Cal. 2012) (quoting *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997)).

The first step in an "equal protection analysis is to identify the [defendants'] classification of groups." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (quoting *Country Classic Dairies, Inc. v. State of Mont., Dep't of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988)). There are two ways to establish classifications. First, a plaintiff can show that he is a member of an identifiable class and

"the law is applied in a discriminatory manner or imposes different burdens on different classes of people." *Freeman*, 68 F.3d at 1187 (citing *Christy v. Hodel*, 857 F.2d 1324, 1331 (9th Cir. 1988)); *see, e.g.*, *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014) (stating that a classification group "must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified"). Alternatively, "an equal protection claim can lie where the plaintiff can establish that he is a 'class of one' in that he 'has been intentionally treated differently from others similarly situated.'" *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1108 (E.D. Cal. 2012) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 566 (2000)); *see Enguist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008).

Under this first step, Plaintiff alleges that "he was denied Equal Protection to all similarly situated prisoners who were allowed to participate in Ramadan." ECF No. 1 at 4. This appears to allege a class of one theory—that Plaintiff was not permitted to attend Ramadan, whereas other similarly situated prisoners (presumably those of the Muslim faith) were permitted to attend Ramadan. Alternatively, it is conceivable to read Plaintiff's complaint to allege a class based equal protection claim—that he is part of a class of prisoners who did not attend weekly services and his class was treated differently from those who did attend weekly services. Liberally construing the complaint, the Court will consider both these theories in its analysis. Under either theory, Plaintiff also adequately pleads that this different treatment was intentional, not inadvertent: he was "scratched off the list [because] he does not regularly attend prisoner facilitated services." ECF No. 1 at 3; *see Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011) (class of one claim requires showing that defendants acted "intentionally"); *Freeman*, 68 F.3d at 1187 (class based claims require showing that policy was "applied in a discriminatory manner or imposes different burdens on different classes of people").

The next step is to identify the proper level of scrutiny. *Freeman*, 68 F.3d at 1187. "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently

suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *see, e.g., Engquist*, 553 U.S. at 601-02; *Village of Willowbrook*, 528 U.S. at 564; *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). To determine the appropriate level of scrutiny, the Court looks to type of classification imposed. Unless the classification warrants heightened review, rational basis review applies. *Nordlinger*, 505 U.S. at 10. If the courts have not bestowed a historically heightened review on the class,[8] courts only apply heightened scrutiny to plaintiffs who (1) have suffered a history of discrimination; (2) "exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group;" and (3) show that they are "minority or politically powerless." *Bowen v. Gilliard*, 483 U.S. 587, 602 (1987); *High Tech Gays v. Defense Industrial Security Clearance Office*, 895 F.2d 563, 573 (9th Cir. 1990). Rational basis review applies in cases proceeding under the class of one theory. *Enguist*, 553 U.S. at 602 ("the class-of-one theory of equal protection . . . presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review"); *Gerhart*, 637 F.3d at 1022 (action must be shown to be "without a rational basis").

Here, importantly, Plaintiff does not allege that he was discriminated against because he was Muslim and therefore a member of a suspect class. In other words, his allegation is not that all Muslims were prohibited from participating in an activity. Instead, Plaintiff claims that he was treated differently (*i.e.*, not permitted to participate in Ramadan) from other Muslims. ECF No. 1 at 3-4. Thus, under a class of one theory, Defendants' actions need only survive rational basis review. Alternatively, under a class

_____

[8] For example, suspect classes, like race or religion, are subjected to strict scrutiny. *See, e.g.*, *Loving v. Virginia*, 388 U.S. 1, 11 (1967) (stating that racial classifications are subjected to strict scrutiny); *Davis*, 901 F. Supp. 2d at 1220 (stating that religious classifications are subjected to strict scrutiny).

based theory—where the classification would be those who attended weekly services, on one hand, and those who did not attend weekly services, on the other—rational basis would still apply. Not attending weekly services is not an inherent suspect or immutable characteristic for which courts have historically applied heightened review. Moreover, Plaintiff pleads no facts that this group should still receive heightened scrutiny under *Bowen*, such as suffering historic discrimination or being politically powerless. Accordingly, since no heightened scrutiny applies, the Court finds that rational basis review should be applied.

### b. Rational Basis Review

Under the rational basis test, "a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (citation and internal quotations omitted). The policy is presumed constitutional and Plaintiff bears the burden to prove that the policy was not rational, such as to negate "every conceivable basis which might support it." *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

The rational basis test may be applied on a motion to dismiss. *HSH, Inc. v. City of El Cahon*, 44 F. Supp. 3d 996, 1008 (S.D. Cal. 2014) (citing *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1208-11 (9th Cir. 2005)). However, "rational basis review at the motion to dismiss stage poses unique challenges." *HSH*, 44 F. Supp. 3d at 1008 (quoting *Immaculate Heart Central Sch. v. N.Y. State Pub. High Sch. Athletic Ass'n*, 797 F. Supp. 2d 204, 211 (N.D.N.Y. 2011)). In particular, there is "tension in the interplay between the forgiving standard of a 'plausible' claim under Rule 12(b)(6) and the 'heavy presumption of validity of government conduct inherent in the rational basis standard.'" *A.J. Cal. Mini Bus, Inc. v. Airport Comm'n of City & Cty. of San Fransisco*, 148 F. Supp. 3d 904, 918 (N.D. Cal 2015) (quoting *Wolfe v. Deeb*, No. C 04-5164 CRB, 2005 U.S. Dist. LEXIS 4873, at *13-14 (N.D. Cal. Mar. 22, 2005)). As one circuit court has explained:

> The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.

*Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992) (citation omitted). A court should "take as true all of the complaint's allegations and reasonable inferences that follow," but the "plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *HSH*, 44 F. Supp. 3d at 1008 (quoting *Wroblewski*, 965 F.2d at 460); *see, e.g., A.J. Cal. Mini Bus*, 148 F. Supp. 3d at 918; *Hood Canal Sand & Gravel, LLC v. Brady*, 129 F. Supp. 3d 1118, 1126 (W.D. Wash. 2015); *Immaculate Heart Central Sch.*, 797 F. Supp. 2d at 211.

In order to apply rational basis review at the motion to dismiss stage, the "court may go beyond the pleadings to hypothesize a legitimate governmental purpose." *HSH*, 44 F. Supp. 3d at 1008. However, the rational relationship must be "real." *Id.* "The appropriateness of looking beyond the pleadings to perform a rational relationship analysis depends on (1) the specific facts pleaded by the plaintiff, (2) the state of knowledge of the court making the analysis, and (3) the complexity of the official action which is being challenged." *Id.* (quoting *Mahone v. Addicks Utility Dist. of Harris Cty.*, 836 F.2d 921, 936 (5th Cir. 1988)). Some courts have found it inappropriate to evaluate rational basis at the motion to dismiss stage. *See, e.g., Sacramento Cty. Retired Employees Ass'n v. County of Sacramento,* No. CIV S-11-0355 KJM, 2012 WL 1082807, at *6 (E.D. Cal. Mar. 31, 2012) ("[I]t is not the court's task on a motion to dismiss to determine whether defendant's actions were rationally related to its legitimate interest."); *Stamas v. County of Madera*, No. CVF090753LJOSMS, 2010 WL 2556560, at *6 (E.D. Cal. June 21, 2010) (finding "factual challenge on the underlying merits" on whether action had rational basis was not appropriate at the motion to dismiss stage); *Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*, 326 F. Supp. 2d 1128, 1137-38 (E.D. Cal. 2003) (denying motion to dismiss equal protection claim where answers to factual

17cv2475-CAB (NLS)

questions were necessary to "properly evaluate the claim").

Under this framework, the Court finds that determination of a rational basis at the motion to dismiss stage is premature. Plaintiff's complaint simply alleges that he was excluded from participating in Ramadan because he did not regularly attend Islamic services. ECF No. 1 at 3. There is nothing else in the complaint about other background facts surrounding this decision. For example, the Court has no idea if this is because of an official policy that precludes all those who do not attend services to go. This stands in contrast to other cases where the court determined it was appropriate to engage in rational basis review at the motion to dismiss stage. *See, e.g.*, *A.J. California Mini Bus*, 148 F. Supp. 3d at 918-20 (finding that there was enough "from the face of the complaint" regarding the policy reason for the system that was being challenged such that the court could evaluate the relationship between the system and the goals it was aimed to achieve); *HSH*, 44 F. Supp. 3d at 1008 (dismissing equal protection claim where challenged ordinance included enumerated specific purposes it was aimed to meet and finding rational relationship between differential treatment and meeting those purposes).

In their motion, Defendants offer a possible explanation for the decision: that Kahn limited participation to people who were "practicing Islam and who did not have personal issues with other members of the religious community" and "permitting [Plaintiff] to attend would have caused conflict within the community and risked the safety of the inmates." ECF No. 10-1 at 6-7. However, there are no allegations in the complaint that would suggest that this lifestyle conflict was known to Chaplain Kahn such that it could have formed the basis of his denial.[9] Without such information, the Court cannot evaluate whether this connection offered by Defendants was "real." *See Guru Nanak Sikh Society of Yuba City*, 326 F. Supp. 2d at 1137 ("Even under rational basis review,

---

[9] To the contrary, in Plaintiff's first level appeal, RJD's response detailed that "During your interview, you stated you are attending services . . . [and y]ou will be added to next year's Ramadan list." ECF No. 1 at 15.

this bare assertion of legislative purpose, unaccompanied by an attempt to demonstrate why the particular regulation at issue advances that purpose, is insufficient to warrant a rejection of plaintiff's claim at the motion to dismiss stage.").  And without further information regarding whether this decision was made due to a policy at the prison or whether it was made based on some background facts about Plaintiff himself or the Muslim population at the prison, it is difficult for the Court to even fathom a legitimate purpose or rational relationship on its own.  With simply the bare-boned complaint at this stage in the proceedings, the Court concludes that it cannot properly assess rational basis and **DENIES** the motion to dismiss as to this claim.

Plaintiff additionally states in his complaint that he was denied equal protection "to receive a response to his submitted 22 Forms and was allowed to miss the entire month of Ramadan with no action at all."  ECF No. 1 at 4.  To the extent that Plaintiff attempts to state a separate equal protection claim here, it fails.  At the outset, Plaintiff fails to allege what the classification of groups he is challenging here.  Plaintiff also fails to allege how he was intentionally treated differently than anyone else who was similarly situated.  Thus, Defendants' motion to dismiss as to this claim is **GRANTED**.

Thus, this Court **RECOMMENDS** that Defendants' motion to dismiss as to Plaintiff's equal protection claim be **GRANTED IN PART AND DENIED IN PART.**

### ii.    Plaintiff's Claims Against Paramo, Garza, and Brown

Defendants also move to dismiss Plaintiff's claims against Paramo, Garza, and Brown, claiming they cannot be liable under a theory of respondeat superior.  ECF No. 10-1 at 4-5.  Plaintiff counters that Paramo, Garza, and Brown can be held liable for improperly supervising Kahn.  ECF No. 18 at 2.

Respondeat superior liability does not exist under section 1983.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citation omitted).  Thus, there is no respondeat superior liability for government officials resting solely on the actions of their subordinates.  To hold a person "liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation."  *Id*.  A supervisory official may

be liable only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976); *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc); *see also Iqbal*, 556 U.S. at 1948 ("[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Causation may be established by showing that the supervisor set in motion a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict the injury. *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998). Essentially, four circumstances may render a supervisor liable under section 1983: (1) participation in or directing the constitutional violation; (2) knowledge of the violation and failure to act to prevent it; (3) failure to train or supervise personnel, leading to the deprivation of constitutional rights; or (4) adoption of a policy which led to the deprivation of constitutional rights. *Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680-681 (9th Cir. 1984). If there is no affirmative link between a defendant's conduct and the alleged injury, there is no deprivation of the plaintiff's constitutional rights. *Rizzo*, 423 U.S. at 370.

### a. Plaintiff's Claims against Paramo

Plaintiff's allegations against Paramo are as follows. Paramo allowed Chaplain Kahn to violate his duty statement by "rarely com[ing] to A-Yard at all" and allowed prisoners to "facilitate, run, and control" the Islamic services in Kahn's absence. ECF No. 1 at 3. Those prisoners scratched Plaintiff's name off the Ramadan participation list because he did not regularly attend services. *Id.* Paramo then refused to act and this inaction led to Plaintiff missing the entire month of Ramadan. *Id*. at 3-4.

Thus, against Paramo, Plaintiff does not allege anything more than passive knowledge, and no affirmative actions or omissions. "Mere knowledge of and acquiescence in the conduct of subordinates is insufficient to hold a supervisor liable under Section 1983[.]" *Stevenson v. Holland*, No. 1:16-cv-01831-AWI-SKO, 2017 WL 2958731, at *10 (E.D. Cal. July 11, 2017). And more importantly, Plaintiff does not allege that Paramo knew that Plaintiff's constitutional rights were being violated and refused to act accordingly. *See Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007) (noting that supervisory liability is imposed for the supervisor's "own culpable action or inaction . . . [or] for his acquiescence to the *constitutional* deprivations") (emphasis added). Simply "allowing" Kahn to shirk his duties of leading weekly Islamic services is not enough; Plaintiff must plead that Paramo reasonably should have known that his inaction would set in motion Kahn inflicting constitutional harms.

Thus, this Court **RECOMMENDS** that Defendants' motion to dismiss as to Defendant Paramo be **GRANTED.**

### b.      *Plaintiff's Claims against Garza*

The factual allegations against Garza are scarce. The only allegation against him is that, similar to Paramo, Garza allows Kahn to violate his duty statement by "rarely com[ing] to A-Yard at all." ECF No. 1 at 3. Thus, for the same reasons as previously stated for Paramo, these allegations do not amount any knowledge of a constitutional violation and refusal to act. Thus, this Court also **RECOMMENDS** that Defendants' motion to dismiss as to Defendant Garza be **GRANTED.**

### c.      *Plaintiff's Claims against Brown*

As to Brown, Plaintiff makes similar allegations as he does against Paramo. However, in addition, he alleges that on May 26, 2017, on or about the first day of Ramadan, he filed a Form 22, requesting that Kahn allow him to participate in Ramadan. ECF No. 1 at 3. Plaintiff alleges this initial complaint was also relayed via email to Kahn and Brown, to which Plaintiff received no response. *Id*.

The Court finds that this additional allegation is critical and sufficient for Plaintiff to maintain a claim against Brown. A supervisory defendant "that is aware" of the actions of "his or her subordinates yet does nothing to prevent such abuses even though he or she is in a position to do so, is responsible for his or her own inaction." *Stevenson*, 2018 WL 1109707, at *11 (citing *Starr v. Baca*, 652 F.3d 1202, 1208-1209 (9th Cir. 2011)). In *Stevenson*, a prison guard supervisor saw one instance of his subordinate guards using excessive force and failed to reprimand them; this was enough for the court to deny his motion to dismiss, since plaintiff had successfully pled a supervisory liability claim against him on the grounds that he had "actual notice" of the incident and "took no action[.]" 2018 WL 1109707, at *10. Here, Brown is alleged to have received an email from Plaintiff, sent via Sergeant Scharr, alerting him that Plaintiff was taken off the Ramadan list and requesting to participate in Ramadan; Brown did not respond, and Plaintiff missed the entire month of Ramadan. ECF No. 1 at 3, 12.[10] Thus, Plaintiff has adequately plead that Brown had actual notice of the impending constitutional violation and failed to act to prevent it. *See Taylor v. List*, 880, F.2d 1040, 1045 (9th Cir. 1989) (noting that a supervisor is liable for the acts of his subordinates "if the supervisor . . . knew of the violations [of subordinates] and failed to act to prevent them.").

Thus, this Court **RECOMMENDS** that Defendants' motion to dismiss as to Defendant Brown be **DENIED.**

### iii. Leave to Amend

Leave to amend should be granted if it appears possible that the plaintiff can correct the complaint's deficiency. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701

---

[10] Though Plaintiff's complaint itself provides a bare bones assertion regarding the Form 22, Plaintiff provided the Form 22 as an exhibit to his complaint, which stated more fully: "Sir today I was told that I was taken off the Ramadan list I signed up for because I do not regularly attend the Friday Juma Services. . . . Sir I am requesting that I be allowed to participate in Ramadan[.]" ECF No. 1 at 3, 12; *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

17cv2475-CAB (NLS)

(9th Cir. 1988). The "rule favoring liberality in amendments to pleadings is particularly important for the *pro se* litigant. Presumably unskilled in the law, the *pro se* litigant is far more prone to make errors in pleading than the person who benefits from the representation of counsel." *Noll*, 809 F.2d at 1448, *superseded by statute on other grounds, Lopez*, 203 F.3d at 1126-30; *see Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013); *accord Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) ("Generally a district court errs in dismissing a *pro se* complaint for failure to state a claim . . . without giving the plaintiff an opportunity to amend.").

Therefore, the Court **RECOMMENDS** that Plaintiff be **GRANTED** leave to amend his complaint.

## VI.    CONCLUSION AND RECOMMENDATION

On Defendants' motion for summary judgment, the Court **RECOMMENDS** that the motion be **DENIED**.

On Defendants' motion to dismiss, the Court **RECOMMENDS** that the motion be **GRANTED IN PART AND DENIED IN PART**, as follows:

(1) Defendants' motion to dismiss Plaintiff's Equal Protection claim be **GRANTED IN PART AND DENIED IN PART** as to all Defendants;

(2) Defendants' motion to dismiss Defendant Paramo from the remaining First and Fourteenth Amendment claims be **GRANTED**;

(3) Defendants' motion to dismiss Defendant Garza from the remaining First and Fourteenth Amendment claims be **GRANTED**; and

(4) Defendants' motion to dismiss Defendant Brown from the remaining First and Fourteenth Amendment claims be **DENIED**.

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **February 12 , 2019**, any party to this action may file written objections and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

17cv2475-CAB (NLS)

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **February 26, 2019**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  January 29, 2019

Hon. Nita L. Stormes
United States Magistrate Judge

17cv2475-CAB (NLS)